IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

REGINALD SMITH,

                Petitioner,

vs.

SCOTT R. FRAKES,

                Respondent.

**8:19CV80**

**MEMORANDUM
AND ORDER**

This matter is before the court on Reginald Smith's ("Petitioner" or "Smith") Petition for Writ of Habeas Corpus. (Filing No. 1.) For the reasons that follow, Petitioner's habeas petition is denied and dismissed with prejudice.

## I. CLAIMS

Summarized and condensed, and as set forth in the court's initial review order (filing no. 4), Smith asserted the following claims that were potentially cognizable in this court:

Claim One:     Petitioner was denied effective assistance of counsel because trial counsel (1) presented no evidence, (2) did not call important witnesses who were at the scene to testify about what they observed, and (3) did not allow Petitioner to testify as to the issue of self defense.

Claim Two:     Petitioner was denied his constitutional right to a fair trial because the trial court erred by not granting Petitioner's motions for mistrial and by not granting a mistrial after the second time the jury informed the trial court it could not reach a verdict.

Claim Three: The trial court erred in allowing into evidence Exhibits 4, 5, 6, and 7 to enhance Petitioner's sentence.

Claim Four: There was insufficient evidence as a matter of law to sustain Petitioner's conviction.

(Filing No. 4 at CM/ECF pp. 1-2 (formatting alterations to original).)

## II. BACKGROUND

### A. Conviction and Sentence

The court states the facts as they were recited by the Nebraska Court of Appeals in *State v. Smith*, No. A-17-243, 2017 WL 8724084 (Neb. Ct. App. Nov. 28, 2017) (filing no. 7-3). *See Bucklew v. Luebbers*, 436 F.3d 1010, 1013 (8th Cir. 2006) (utilizing state court's recitation of facts on review of federal habeas petition).

On July 28, 2016, officers—including City of Scottsbluff Police Officers Matthew Broderick and Michael Modec—responded to a call to investigate a report that Smith had threatened another man with a knife. The officers arrived at Smith's residence and knocked on his door without announcing that they were law enforcement. Smith opened the door holding a machete-like object in a threatening manner. The officers told Smith to drop the machete, and Smith complied stating he "thought it was the other dude coming for him." The officers took Smith into custody and locked his apartment door without taking the machete into evidence.

Smith was charged under Neb. Rev. Stat. § 28-1206 (Reissue 2016) with being a prohibited person in possession of a deadly weapon. During the jury trial, testimony was received from Officers Broderick and Modec concerning why they went to Smith's residence, what they observed at Smith's residence, how Smith responded to the officers when he answered his door, and what was found in a subsequent search of Smith's home. Officer Broderick's body camera footage of the investigation at Smith's residence was also received in support of the officers' testimonies. During deliberations, the jury twice indicated that it was likely

deadlocked and the district court asked them to take additional time to consider whether further review of the evidence would aid them in reaching a verdict. During such review following the second such indication of deadlock, the jury reached a guilty verdict.

Following the jury verdict, an enhancement hearing was held. The State offered into evidence exhibits 4 through 7. Exhibit 4 is a certified copy of court records from the Superior Court of California, County of Los Angeles, People of the State of California v. Reginald Smith, case No. GA005357; Exhibit 5 is a certified copy of court records from the Superior Court of California, County of Los Angeles, People of the State of California v. Reginald Smith, case No. GA006199; Exhibit 6 is also a copy of court records from the Superior Court of California, County of Los Angeles, People of the State of California v. Reginald Smith, case No. GA006199; and Exhibit 7 is a certified copy of court records from the Superior Court of California, County of Los Angeles, People of the State of California v. Reginald Smith, case No. BA132150.

After these exhibits were offered, Smith objected to them stating:

> I would object to all exhibits on the basis of hearsay, relevance and foundation. And specifically, Your Honor, I would note that in all these exhibits there are corrections that have been made by the court, I see a number of nunc pro tunc entries that explain what changes were made although the changes that were made are not very well described, I really don't understand what changes regarding terms are concerned, for these reasons I would object to Exhibit 4, 5, 6 and 7.

After receiving confirmation that the exhibits were certified copies, the district court overruled Smith's objections and received the exhibits into evidence explaining: "I think some of the issues raised by [Smith's counsel] really go more to weight than they do to admissibility."

The district court subsequently determined Smith was a habitual offender under Neb. Rev. Stat. § 29-2221 (Reissue 2016). Based on this finding, the district court sentenced Smith to 10 to 10 years' imprisonment with credit for time served.

## B. Direct Appeal

Smith appealed his conviction and sentence to the Nebraska Court of Appeals. (Filing No. 7-1; Filing No. 7-3.) Smith was represented by different counsel on appeal than at trial. (Filing No. 7-1 at CM/ECF p. 2.) Smith argued that trial counsel was ineffective in not presenting further evidence to support his defense by failing to call witnesses on his behalf, including Teresa Lucius, Sue Caldwell, and Roberta Valdez to testify about their observations during the altercation and not allowing him to testify concerning a possible self-defense claim. (Filing No. 7-4 at CM/ECF pp. 6, 13-14.) Smith also argued that the trial court erred in (1) failing to sustain his motions for mistrial after an argument by the State during opening statements and after Officer Modec's testimony, and in failing to unilaterally order a mistrial after the second time the jury indicated it could not reach a verdict; and (2) admitting Exhibits 4 through 7 as evidence of his prior convictions at his enhancement hearing over his objections. (Filing No. 7-4 at CM/ECF pp. 6, 14-17.) Last, Smith asserted that there was insufficient evidence to support the jury's guilty verdict. (Filing No. 7-4 at CM/ECF pp. 6, 17-22.)

In a memorandum opinion dated November 28, 2017, the Nebraska Court of Appeals affirmed Smith's conviction and sentence. (Filing No. 7-3.) The court determined that the record was insufficient to review his claims of ineffective assistance of trial counsel and rejected his remaining claims on the merits. (Filing No. 7-3 at CM/ECF pp. 4-17.) Smith filed a petition for further review with the Nebraska Supreme Court, raising the same claims as in the Nebraska Court of Appeals. (Filing No. 7-6.) The Nebraska Supreme Court denied Smith's petition for further review on February 1, 2018. (Filing No. 7-1 at CM/ECF p. 3.)

## C. Postconviction Action

Smith filed a pro se motion for postconviction relief on July 5, 2018, challenging his habitual criminal enhancement. (Filing No. 7-9 at CM/ECF pp. 2-5.) In a written order dated August 27, 2018, the state district court denied postconviction relief without an evidentiary hearing. (Filing No. 7-9 at CM/ECF pp. 29-30.) The court noted that the arguments concerning the admissibility of Exhibits 4-7 were raised and rejected on direct appeal and that Smith's habitual criminal finding was affirmed. (Filing No. 7-9 at CM/ECF p. 30.) Additionally, the court found that the "allegations as alleged in the motion for post conviction relief could have been litigated on direct review during the appeal" but were not. (Filing No. 7-9 at CM/ECF p. 30.)

On October 3, 2018, Smith appealed the denial of postconviction relief to the Nebraska Court of Appeals. (Filing No. 7-2 at CM/ECF p. 2.) On October 24, 2018, the Nebraska Court of Appeals dismissed the appeal as untimely pursuant to Neb. Ct. R. App. P. § 2-107(A)(2). (Filing No. 7-2 at CM/ECF p. 2.) On November 7, 2018, Smith filed a motion for rehearing, which the Nebraska Court of Appeals denied as untimely pursuant to Neb. Ct. R. App. P. § 2-113. (Filing No. 7-2 at CM/ECF p. 2.) The mandate issued on January 8, 2019. (Filing No. 7-2 at CM/ECF p. 2.)

## D. Habeas Petition

Smith timely filed his Petition in this court on February 19, 2019. (Filing No. 1.) In response to the Petition, Respondent filed an Answer (filing no. 8), a Brief (filing no. 10), and the relevant state court records (filing no. 7). Respondent argues that Smith's claims are either procedurally defaulted, not cognizable in federal habeas proceedings, or without merit. (Filing No. 10 at CM/ECF p. 4.) Smith did not file a brief in response to Respondent's Answer and Brief. Respondent filed a Notice of Submission indicating that he would not be filing a reply brief as Smith did not

file a response brief. (Filing No. 11.) This matter is now fully submitted for disposition.

## III.  OVERVIEW OF APPLICABLE LAW

A couple strands of federal habeas law intertwine in this case. They are (1) exhaustion and procedural default and (2) the deference that is owed to the state courts when a federal court reviews the factual or legal conclusions set forth in an opinion of a state court. The court elaborates upon those concepts next so that it may apply them later in a summary fashion as it reviews Smith's claims.

### A.  Exhaustion and Procedural Default

As set forth in 28 U.S.C. § 2254:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must

give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A state prisoner must therefore present the substance of each federal constitutional claim to the state courts before seeking federal habeas corpus relief. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented to the trial court, and then in an appeal to either the Nebraska Supreme Court directly[1] or to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005).

"In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) (internal citation and quotation omitted). Although the language need not be identical, "[p]resenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999). In contrast, "[a] claim has been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition." *Wemark v. Iowa*, 322 F.3d 1018, 1021 (8th Cir. 2003) (citation omitted).

Where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate

---

[1] Where a life sentence has been imposed in a criminal case, the appeal goes directly to the Nebraska Supreme Court. Neb. Rev. Stat. § 24-1106 (West).

state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).

To be precise, a federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Also, a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims on the merits notwithstanding the existence of a procedural bar to relief. *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). To invoke the actual innocence exception, a petitioner "must show that in light of all the evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Jennings v. United States*, 696 F.3d 759, 764-65 (8th Cir. 2012) (quoting *Schlup v. Delo*, 513 U.S. 298, 327, (1995)). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

## B. Nebraska Law Relevant to Procedural Default

Under Nebraska law, you don't get two bites of the postconviction apple; that is, "[a]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." *State v. Ortiz*, 670 N.W.2d 788, 792 (Neb. 2003). Additionally, "[a] motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." *Hall v. State*, 646 N.W.2d 572, 579 (Neb. 2002). *See also State v. Thorpe*, 858 N.W.2d 880, 887 (Neb. 2015) ("A motion for postconviction

relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, no matter how those issues may be phrased or rephrased.")

Moreover, a person seeking postconviction relief must present his or her claim to the district court or the Nebraska appellate courts will not consider the claim on appeal. *State v. Deckard*, 722 N.W.2d 55, 63 (Neb. 2006) (denying postconviction relief in a murder case and stating: "An appellate court will not consider as an assignment of error a question not presented to the district court for disposition through a defendant's motion for postconviction relief.") Similarly, on appeal, the appealing party must both assign the specific error and specifically argue that error in the brief. Otherwise the claim is defaulted under Nebraska law. *State v. Henry*, 875 N.W.2d 374, 407 (Neb. 2016) (stating an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court).

Note also that Nebraska has a statute of limitations for bringing postconviction actions that is similar to federal law. It reads:

> (4) A one-year period of limitation shall apply to the filing of a verified motion for postconviction relief. The one-year limitation period shall run from the later of:
>
> > (a) The date the judgment of conviction became final by the conclusion of a direct appeal or the expiration of the time for filing a direct appeal;
> >
> > (b) The date on which the factual predicate of the constitutional claim or claims alleged could have been discovered through the exercise of due diligence;
> >
> > (c) The date on which an impediment created by state action, in violation of the Constitution of the United States or the Constitution of Nebraska or any law of this state, is removed, if the prisoner was prevented from filing a verified motion by such state action;

(d) The date on which a constitutional claim asserted was initially recognized by the Supreme Court of the United States or the Nebraska Supreme Court, if the newly recognized right has been made applicable retroactively to cases on postconviction collateral review; or

(e) August 27, 2011.

Neb. Rev. Stat. § 29-3001(4) (West).

## C.  Deferential Standard Under 28 U.S.C. § 2254(d)

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Id.* at 405-06. Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the

petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.*

However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA [Antiterrorism and Effective Death Penalty Act] standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. Accordingly, the postconviction trial court's discussion of counsel's performance—combined with its express determination that the ineffective-assistance claim as a whole lacked merit—plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011) (internal quotation marks and citations omitted).

The court also determined that a federal court reviewing a habeas claim under AEDPA must "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts." *Id.* at 497. A district court should do

"so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." *Id.*

## IV.  DISCUSSION

### A.  Claim One

In Claim One, Smith asserts that he was denied effective assistance of counsel because trial counsel (1) presented no evidence, (2) did not call important witnesses who were at the scene to testify about what they observed, and (3) did not allow Smith to testify as to the issue of self-defense. (Filing No. 1 at CM/ECF p. 5.)  Smith raised these allegations on direct appeal, but the Nebraska Court of Appeals concluded that the record was insufficient to review them. (Filing No. 7-3 at CM/ECF pp. 4-6.) Smith did not reassert these ineffective assistance of counsel claims in his postconviction motion.

Under Nebraska law, when an issue regarding ineffective assistance of counsel has not been presented to the trial court, but the issue is raised on direct appeal (as in cases, like here, where new appellate counsel attacks trial counsel), the Nebraska courts will consider and resolve such a claim when the record is sufficient to do so. *See Sims v. Houston*, 562 F. Supp. 2d 1066, 1072 n.4 (D. Neb. 2008). Indeed, where there is new appellate counsel, issues related to trial counsel's ineffective performance must be raised on direct appeal or they will be procedurally barred if later brought in a state postconviction action. *Id.*; *see, e.g.*, *State v. Bennett*, 591 N.W.2d 779, 782-83 (Neb. 1999) (where the defendant had new counsel for his direct appeal, defendant's postconviction motion was procedurally barred due to his failure to litigate on direct appeal claims of ineffective assistance of trial counsel based on attorney's fraudulent readmission to the bar, failure to object to evidence of defendant's prior bad acts, and failure to call alibi witness). "If the record is not sufficient to decide the claim on direct appeal, the defendant *must* litigate the claim that his trial counsel was ineffective in a separate state post-conviction action so that a proper record can be made." *Sims*, 562 F. Supp. 2d at 1072 n.4 (emphasis added)

(citing *Bennett*, 591 N.W.2d at 782-83 ("Although an appellate court will not address an ineffective assistance of counsel claim on direct appeal when the matter necessitates an evidentiary hearing, an appellate court's refusal to do so does not bar a later motion for postconviction relief.") (internal citation omitted)).

Here, the Nebraska Court of Appeals determined that Smith's ineffective assistance of counsel claims could not be addressed on direct appeal because the record was insufficient. (Filing No. 7-3 at CM/ECF pp. 4-6.) As such, Smith was required to reassert these claims in his postconviction motion to preserve them for federal habeas review. *See Sims*, 562 F. Supp. 2d at 1072 n.4. He did not do so. (Filing No. 7-9 at CM/ECF pp. 2-5.) Thus, these claims are procedurally defaulted. Smith cannot raise these issues in a successive postconviction motion. *See Ortiz*, 670 N.W.2d at 792. Furthermore, any successive postconviction motion filed by Smith would also be barred by Nebraska's statute of limitations.

Smith has not shown cause or prejudice for this default.[2] Neither has he come close to showing that it would constitute a miscarriage of justice to impose the procedural default rules. He is certainly not actually (factually) innocent.

---

[2] In his Petition, Smith asserts that he did not raise these claims in his postconviction motion because he "was being helped by an individual that did not know what he was doing and ultimately left these arguments out." (Filing No. 1 at CM/ECF p. 6.) Smith does not identify the individual. In any event, to the extent Smith looks to *Martinez v. Ryan*, 566 U.S. 1 (2012), to support cause for his default, his reliance is misplaced. In *Martinez*, the Supreme Court reasoned that a federal habeas court should "hear a claim of ineffective assistance of trial counsel when an attorney's errors (or the absence of an attorney) caused a procedural default in an initial-review collateral proceeding . . . ." *Id.* at 13. The Supreme Court's *Martinez* decision does not apply here because Nebraska's collateral review process was not the first opportunity Smith had to raise the ineffective assistance of trial counsel claims as Smith had separate counsel on the direct appeal. *See Dansby v. Hobbs*, 766 F.3d 809, 834 (8th Cir. 2014). Indeed, Smith raised his ineffective assistance of trial counsel claims on direct appeal.

## B. Claim Two

In Claim Two, Smith contends that he was denied his constitutional right to a fair trial because the trial court erred by (1) not granting his motions for mistrial after an argument by the State during opening statements and after Officer Modec's testimony, and (2) not granting a mistrial after the second time the jury informed the trial court it could not reach a verdict. (Filing No. 1 at CM/ECF p. 7.)

Smith presented these claims in one complete round in Nebraska's state courts. In rejecting the claims on direct appeal, the Nebraska Court of Appeals wrote:

> The decision whether to grant a motion for mistrial will not be disturbed on appeal absent an abuse of discretion. *State v. Mitchell*, 294 Neb. 832, 884 N.W.2d 730 (2016). A mistrial is properly granted in a criminal case where an event occurs during the course of a trial that is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial. *State v. Mitchell*, 294 Neb. 832, 884 N.W.2d 730 (2016). The defendant must prove that the alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice. *Id.*
>
> ### (a) Motion for Mistrial During Opening Statements
>
> Smith's first claim alleges the district court should have granted his motion for mistrial after the State's reference to the underlying reason for Smith's arrest made during opening statements. Smith specifically objected to this portion of the State's opening statements:
>
> > . . . On July 28th of 2016, Officer Broderick was working, he was on patrol and he was dispatched to an apartment over on East Overland. He was dispatched there with reports of a fight, of an altercation. He heard some stories, found out that [Smith] had threatened someone. Now, as you learned in voir dire there's two sides to every story so Officer Broderick went to [Smith's] house and he knocked on the door. . . .

After the State's opening statement concluded, Smith's counsel objected and asked for a mistrial arguing:

> [The State] just told the jury that the police were responding because my client had threatened someone, that is not part of the charges against him that he's currently being charged with. I don't believe any evidence would be permissible regarding this alleged threat as it's not relevant to the charges he's currently facing. Also, Your Honor, this is a felon in possession of a weapon case, machete, and I think it's quite clear that the jurors will link up the threat that the officers came to talk to [Smith] about and the machete that he answered the door with, even though in the original charge was supposedly this item that he was threatening with was a small pocket knife. For these reasons, Your Honor, I don't believe that we can unring this particular bell and I think a mistrial is in order.

The district court overruled Smith's motion for mistrial and explained "the jurors have been instructed and will be instructed again that what the attorneys say is not evidence." The district court went on to outline how the parties should address any reference to the reason for the officers' presence at Smith's residence. Specifically, the district court stated "I will limit the State from presenting the reason for the response, I think we'll just have the officers responded to that facility, got a call and not go into particulars, then they'll pick up what happened after the officer got there."

The district court did not abuse its discretion in overruling Smith's motion for a mistrial. As the court stated, it had previously instructed the jury what it could consider in reaching its verdict and that statements made by the attorneys were not evidence to be considered. Additionally, the statement made by the State only explained why officers went to Smith's home to investigate an earlier call. The State did not offer any further details beyond that the officers were present to investigate an earlier report that Smith had made a threat to another individual. Once the objection was made, the district court adequately addressed how the parties were to handle the issue of why the officers were present at Smith's home. In the jury instructions following the presentation of evidence, the district court again instructed the jury not

to consider statements made by the attorneys as evidence in making its verdict. For these reasons, the district court did not err in overruling Smith's motion for a mistrial after the State's opening statement.

### (b) Motion for Mistrial After Officer Modec's Testimony

Smith's second claim alleges the district court should have granted his motion for a mistrial after Officer Modec referred to the charge for which Smith was originally arrested during his testimony. In response to a question by the State about whether Smith was arrested for being a felon in possession of a knife or on another charge, Officer Modec testified "Officer Broderick arrested him for terroristic threats." After Smith objected, the district court told the jury that Officer Modec's answer was stricken and ordered them to disregard the answer. Outside the presence of the jury, Smith moved for a motion for a mistrial stating:

> I had asked for mistrial earlier, Your Honor, when the State in its opening referred to [Smith] being investigated for threatening someone, the Court ruled, well, that's just opening statements, statements from attorneys aren't evidence. The State then followed up with this particular witness, Officer Modec, okay, what was the purpose of the contact, what was he arrested for and now we have testimony [in front of this] jury that he was arrested for terroristic threats. These are items that he's not currently facing charges on, they're not relevant to the issue at hand, Your Honor, they're very prejudicial, unfairly prejudicial, they cannot help but prejudice the mind of the jury in deciding in this case whether this gentleman was a felon in possession of a deadly weapon. For these reasons I'm asking the Court to protect Mr. Smith's rights and grant us a mistrial.

The State resisted stating:

> I believe the exact question from the State was was this defendant arrested for being a felon in possession of a knife and the officer volunteered additional information beyond that. Mr. Madelung opened the door to that testimony in asking what he was arrested for and making

> an issue of the fact the knife wasn't recovered, I don't believe it's grounds for a mistrial again, Your Honor.

The district court overruled the motion and restated that it struck the answer and ordered the jury to disregard it.

Again, the district court did not abuse its discretion in overruling the motion for a mistrial. While Officer Modec's answer referenced Smith was arrested for a different charge of terroristic threats, he did not explain the circumstances of the charge, the elements of that crime, or the possible existence of another victim. The jury was already aware through the parties' opening statements and earlier testimony that the officers were at Smith's residence to investigate an unrelated crime. Further, the district court immediately struck the answer and instructed that the jury disregard Officer Modec's statement regarding the charge leading to Smith's arrest. For these reasons, the district court did not err in overruling Smith's motion for a mistrial during Officer Modec's testimony.

### (c) Failure to Grant a Mistrial After Jury Indicated That It Was Deadlocked For The Second Time

Smith's third claim alleges the district court should have independently ordered a mistrial once the jury indicated for the second time it could not reach a verdict.

We initially note that Smith did not move for a mistrial at the time the district court ordered the jury to continue deliberations. A party who fails to make a timely motion for mistrial waives the right to assert on appeal that the court erred in not declaring a mistrial. *State v. Smith*, 292 Neb. 434, 873 N.W.2d 169 (2016). While an appellate court is permitted to consider an unraised claim if there is plain error, plain error will be noted only where an error is evident from the record, prejudicially affects a substantial right of a litigant, and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Vela*, 279 Neb. 94, 777 N.W.2d 266 (2010). Consideration of plain error occurs at the discretion of an appellate court. *Id.*

Here, we find no such plain error as the district court sent the jury back to take additional time to decide whether or not they thought further deliberations would be of any benefit after rereading some of the instructions and specifically explaining "I don't want you to feel coerced that you have to come to a verdict, it certainly happens [that there is no unanimous determination]." See *State v. McDaniel*, 17 Neb. App. 725, 771 N.W.2d 173 (2009) (finding there was no plain error in the court instructing the jury to continue deliberating where "the district court directed the jurors to simply continue deliberations to see if they could reach a verdict").

(Filing No. 7-3 at CM/ECF pp. 6-12.)

The Nebraska Court of Appeals' determination that the trial court did not abuse its discretion in overruling trial counsel's requests for a mistrial based on the prosecutor's comments and Officer Modec's testimony was not contrary to, or an unreasonable application of, clearly established federal law. *See Illinois v. Somerville*, 410 U.S. 458, 461-63 (1973) (it is settled law that the trial court has broad discretion to consider whether to declare a mistrial taking all the circumstances into consideration (citing *United States v. Perez*, 22 U.S. 579 (1824))); *see also Renico v. Lett*, 559 U.S. 766, 774 (2010) ("The decision to declare a mistrial is left to the 'sound discretion' of the judge, but 'the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.'"). As the Nebraska Court of Appeals explained, beyond these two instances, the State did not offer any further details beyond that the officers were present to investigate an earlier report that Smith had made a threat to another individual; the trial court twice instructed the jury not to consider statements made by the attorneys as evidence in making its verdict; and the trial court immediately struck Officer Modec's answer and instructed the jury to disregard his statement about the charge leading to Smith's arrest. Moreover, Smith has not demonstrated a reasonable probability that he would not have been convicted but for the prosecutor's comment or Officer Modec's stricken testimony. *See Weston v. Dormire*, 272 F.3d 1109, 1113 (8th Cir. 2001) (for purposes of habeas review under 28 U.S.C. § 2254, the court considers whether the state trial court's ruling on the petitioner's motion for mistrial

rendered his trial fundamentally unfair so as to deny due process); *Kellogg v. Skon, 176 F.3d 447, 451 (8th Cir. 1999)* (the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial, that is, that absent the alleged error, the verdict probably would have been different). Indeed, the Nebraska Court of Appeals determined that the evidence was sufficient for any reasonable juror to conclude that Smith was a prohibited person in possession of a deadly weapon. (Filing No. 7-3 at CM/ECF pp. 14-17.) Thus, the Nebraska Court of Appeals' rejection of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court law.

The court now turns to Smith's claim that the trial court erred in not granting a mistrial after the second time the jury informed the trial court it could not reach a verdict. As a preliminary matter, the Respondent is correct that this ground is procedurally defaulted. On direct appeal, the Nebraska Court of Appeals determined that, because Smith did not move for a mistrial at the time the trial court ordered the jury to continue deliberations, the claim was not preserved for appeal. (Filing No. 7-3 at CM/ECF p. 11.) The Nebraska Court of Appeals nevertheless reviewed the claim for plain error. (Filing No. 7-3 at CM/ECF pp. 11-12.) Under Eighth Circuit law, however, a state court's discretionary plain-error review of unpreserved claims cannot excuse a procedural default. *Clark v. Bertsch, 780 F.3d 873, 877 (8th Cir. 2015).*

In any event, Smith's claim fails on the merits. The Supreme Court "approve[s] of the use of a supplemental charge to encourage a jury reporting itself as deadlocked to engage in further deliberations." *Jones v. United States, 527 U.S. 373, 382 n.5 (1999)* (citing *Allen v. United States, 164 U.S. 492, 501 (1896)*). When the jury informed the trial court a second time that it was deadlocked, the trial court reread some of the jury instructions and directed the jurors to simply continue deliberations to see if they could reach a verdict but not to feel coerced to do so. (Filing No. 7-10 at CM/ECF pp. 107-09). Specifically, the trial court said:

Ladies and gentlemen, there is just no absolute certainty in any case. If this case will be retried it will be a jury much like yourselves was picked, that will be no more intelligent or having no greater insight and so let me read a couple of the jury instructions back to you. And I'm not wanting to coerce a verdict out of you, I want to make sure that you have given it your best shot. This is the fourth paragraph in instruction No. 6, "It is your duty to determine what the facts are. You must approach this task with open minds, consulting with one another freely and honestly exchanging your views concerning this case and respectfully considering the views of other jurors. Do not hesitate to re-examine your own views and to change your mind if you are persuaded that you should but do not [surrender] your honest conviction as to the weight or effect of the evidence solely because of the opinion of another juror or for the mere purpose of returning a verdict."

Then I also want to reread to you the definition of reasonable doubt on instruction No. 2. "A reasonable doubt is one based upon reason and common sense after careful and impartial consideration of all the evidence. Proof beyond a reasonable doubt is proof so convincing that you would rely and act upon it without hesitation in the more serious and important transactions of life. However proof beyond a reasonable doubt is not proof beyond all possible doubt." So again, I don't want you to feel coerced that you have to come to a verdict, it certainly happens that folks—that's why you have 12 and sometimes getting an unanimous decision of 12 people is difficult for anything in life, let alone court proceedings.

With that, I'm going to send you back to the jury room and I want you to take five minutes to decide whether or not you think any further deliberations would be of any benefit and if not, then we'll bring you back out and we'll go ahead and act accordingly. But we gave the case to you about 10:30 so, again, I'm going to send you back, take five minutes, let us know whether or not you think any further deliberations after rereading some of the instructions would be of any benefit for continued deliberation or whether or not you've reached such an impass[e] that you're pretty comfortable with it's not going to change.

The trial court was well within its discretion in giving this supplemental, non-coercive instruction and not sua sponte ordering a mistrial, and the Nebraska Court

of Appeals' affirmance of this decision was neither contrary to, nor an unreasonable application of, Supreme Court law.

## C.  Claim Three

In Claim Three, Smith asserts that the trial court erred in allowing into evidence Exhibits 4, 5, 6, and 7 to enhance his sentence. (Filing No. 1 at CM/ECF p. 8.) The court understands that this claim relies on the grounds raised and rejected in Smith's direct appeal, namely, that the admitted evidence was contrary to state law, Neb. Rev. Stat. § 27-803(7), and the Nebraska Evidence Rules. (Filing No. 7-3 at CM/ECF pp. 12-14.) However, Smith has not identified any federal law that was violated by the admission of the evidence. Violations of state law alone are not sufficient to raise a habeas claim; Smith must allege violations of clearly established federal law. 28 U.S.C. § 2254(d)(1); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (it is not within a federal habeas court's province "to reexamine state-court determinations on state-law questions"; in conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States); *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006) (only when the "evidentiary ruling infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process" will the ruling justify habeas corpus relief); *Scott v. Jones*, 915 F.2d 1188, 1190 (8th Cir. 1990) ("[S]tate law questions are not very often the basis of constitutional error under habeas review."). As such, Smith has not stated a cognizable habeas claim.

To the extent Smith is asserting violations of federal law in his Petition, those claims are unexhausted because he did not assert them at the state level, *see Cox v. Burger*, 398 F .3d 1025, 1031 (8th Cir. 2005), and procedurally defaulted because they cannot be raised in a successive postconviction motion, *see Ortiz*, 670 N.W.2d at 792. Furthermore, any successive postconviction motion filed by Smith would also be barred by Nebraska's statute of limitations.

## D. Claim Four

In Claim Four, Smith contends that there was insufficient evidence as a matter of law to sustain his conviction. (Filing No. 1 at CM/ECF p. 10.) Smith presented this claim in one complete round in Nebraska's state courts. In rejecting the claim on direct appeal, the Nebraska Court of Appeals wrote:

> In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses or reweigh the evidence; such matters are for the finder of fact. *State v. Jenkins*, 294 Neb. 475, 883 N.W.2d 351 (2016). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Pester*, 294 Neb. 995, 885 N.W.2d 713 (2016).

> Smith was charged under Section 28-1206 which provides:

>> (1) A person commits the offense of possession of a deadly weapon by a prohibited person if he or she:

>> (a) Possesses a firearm, a knife, or brass or iron knuckles and he or she:

>> (i) Has previously been convicted of a felony; . . .

>> (2) The felony conviction may have been had in any court in the United States, the several states, territories, or possessions, or the District of Columbia.

> Neb. Rev. Stat. § 28-1201(5) (Reissue 2016) further explains that "knife" means "any dagger, dirk, knife, or stiletto with a blade over three and one-half inches in length or any other dangerous instrument capable of inflicting cutting, stabbing, or tearing wounds." Accordingly, in order for the jury to determine Smith was guilty, the

State had the burden to prove: (1) Smith possessed a deadly weapon; and (2) Smith was previously convicted of a felony.

Smith argues the evidence was insufficient to show that he possessed a deadly weapon. In support of this assertion, he argues the jury received evidence that the view point of the officers was in a low light area, that there was discrepancy between the officers' testimony about the length of the blade, and that the officers did not immediately confiscate the blade and the blade was not found during a later search conducted pursuant to a warrant.

During the trial, the district court received testimony from Officer Broderick and Officer Modec. Officer Broderick testified he went to Smith's address on July 28, 2016, pursuant to an investigation he was working on that date. He explained that he went to Smith's door to make contact and that he was surprised when Smith was holding an object when he answered the door. [Officer Broderick][3] described the item being held "as a machete type weapon [,] a cutting instrument with a sharp blade and a handle . . . approximately two feet in length."

Similarly, Officer Modec testified he was with Officer Broderick during the investigation that led them to Smith's address on July 28, 2016. Officer Modec witnessed Smith respond to their knocking and testified he saw Smith holding a machete with "approximately a 12-inch blade with about a three, three and a half-inch handle." In support of these accounts, the jury also was able to view footage from Officer Broderick's body camera. This testimony, together with the evidence received, was sufficient for the jury's determination Smith possessed a deadly weapon. See *State v. Jenkins*, 294 Neb. 475, 883 N.W.2d 351 (2016) (explaining that an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses or reweigh the evidence; such matters are for the finder of fact).

---

[3] The Nebraska Court of Appeals' opinion states that Smith described the item. The court's review of the transcript, however, confirms that it was Officer Broderick who testified about the details of the machete. (Filing No. 7-10 at CM/ECF p. 80.) This typographical error does not affect the resolution of this proceeding.

Smith also lists several questions in his brief concerning whether a tool can be considered a weapon, whether Smith's possession of the weapon was intentional, and whether the district court's use of Section 28-1201(5) in its jury instruction number 4 defining a "knife" as a "dangerous instrument capable of inflicting cutting, stabbing, or tearing wounds" was overly broad. However, these questions go beyond the assignment of sufficiency of the evidence as Smith acknowledges while explaining "this Court is permitted to note any plain error not assigned." Finding no such plain error, we do not address these arguments. See *State v. King*, 272 Neb. 638, 642, 724 N.W.2d 80, 85 (2006) (stating "an appellate court does not consider errors which are argued but not assigned").

(Filing No. 7-3 at CM/ECF pp. 14-17.)

Having reviewed the trial transcripts in Smith's criminal trial, the court finds that the Nebraska Court of Appeals' adjudication of Claim Four did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. The Nebraska Court of Appeals admittedly did not cite *Jackson v. Virginia*, 443 U.S. 307 (1979), the seminal United States Supreme Court decision on sufficiency of the evidence, but "[a] reasonable application of established federal law 'does not require citation of [United States Supreme Court] cases—indeed, it does not even require *awareness* of [the] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *See Cox*, 398 F.3d at 1030 (quoting *Early v. Packer*, 537 U.S. 3, 8, (2002)) (emphasis in original). The Nebraska Court of Appeals did, however, correctly apply the essence of *Jackson v. Virginia* to the question of whether the evidence was sufficient to support Smith's conviction, and the Nebraska Court of Appeals did so in an objectively reasonable manner; neither the reasoning nor the result contradicts *Jackson v. Virginia*.

Smith also has not shown that the adjudication of the claim by the Nebraska Court of Appeals resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. The Nebraska Court of

Appeals found that Officer Broderick and Officer Modec saw Smith in possession of a deadly weapon (i.e., a machete), facts confirmed by the trial transcripts. Thus, the Nebraska Court of Appeals could and did find the evidence sufficient to support Smith's conviction.

Given the foregoing, the courts finds that Smith cannot overcome the barrier posed by 28 U.S.C. 2254(d). There is no merit to his claim that the evidence was insufficient to support his conviction for being a prohibited person in possession of a deadly weapon.

## V. CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set forth in *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). The court has applied the appropriate standard and determined that Smith is not entitled to a certificate of appealability.

IT IS THERFORE ORDERED that the Petition for Writ of Habeas Corpus (filing no. 1) is denied and dismissed with prejudice. No certificate of appealability has been or will be issued. Judgment will be issued by separate document.

Dated this 9th day of January, 2020.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge